IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL KIM, on behalf of himself and all other plaintiffs similarly situated, known and unknown, | ) ) ) |
| Plaintiff, | ) ) Case No. 18 C 7660 |
| v. | ) ) ) Judge Robert W. Gettleman |
| CENTER FOR SENIORS, an Illinois non-profit organization, YOUNG HA, individually, and JAE KWAN HA, individually, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Kim, on behalf of himself and all others similarly situated, has filed a three-count putative collective action second amended complaint against defendants Young Ha, Jae Kwan Ha, and Center for Seniors ("defendants") alleging violations of: (1) the Fair Labor Standards Act, 29 U.S.C §201, et. seq. ("FLSA"); (2) the Illinois Minimum Wage Law, 820 ILCS 105/1, et. seq.; and (3) the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et. seq., for defendants' alleged failure to pay overtime wages. Defendants have moved to dismiss the second amended complaint in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons described below, defendants' motion is granted.

## BACKGROUND

Defendants Young Ha and Jae Kwan Ha operate an adult day-care business called Center for Seniors ("CFS"). CFS is a non-profit organization under Illinois law and tax-exempt under 26 U.S.C. § 501(c)(3). It has four Illinois branches located in Chicago, Morton Gove, Schaumberg, and Wheeling. All locations are managed by Mr. and Mrs. Ha. CFS's primary

objective is to provide free services to its enrollees, including meals, shuttle services, and recreational activities for senior citizens who derive their incomes solely or partially from Supplemental Security Income ("SSI"). An enrollee is not eligible for subsidized services if his or her total savings (including checking and saving accounts) and stocks (including mutual funds and life insurance policies) are in excess of $17,500.00, but can still join CFS by paying a private fee. From government funding and paying enrollees, CFS's annual gross volume of sales made or business done was more than $500,000.

CFS hired plaintiff as a maintenance worker on or about July 11, 2015. During his employment for defendants, plaintiff started his work sometime between 6:00 – 6:30 a.m. and ended between 4:30 p.m. - 6:00 p.m. Monday through Friday. He regularly worked more than ten to twelve hours per day, five days per week until the end of his employment in October 2018. Plaintiff's hourly rate was $14.40, and he submitted a timesheet every day for all the hours he worked. Mr. and Mrs. Ha were in charge of supervising and paying all of their employees, including plaintiff.

The complaint alleges that during his entire employment, defendants failed to pay plaintiff for all the hours plaintiff worked. In the complaint, plaintiff alleges that he was paid only a fixed amount per month regardless of the overtime hours worked in a day or the number of overtime hours worked in a week. As part of his employment, plaintiff purchased various goods with CFS's credit card at either Home Depot or a local Mexican grocery store in order to clean the facility, help prepare food, and perform maintenance tasks. Additionally, plaintiff's duties included handling CFS's packages that were delivered from out-of-state and maintaining CFS's pond, which included buying an out-of-state motor. As instructed by his supervisors,

plaintiff worked more than 40 hours a week, and alleges that he was never paid the proper amount of overtime wages. Plaintiff also alleges that he is not exempt from the overtime wage provisions of the FLSA.

## LEGAL STANDARD

Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss the second amended complaint for failure to state a claim. A motion under Rule 12 (b)(6) challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor. Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

Defendants argue that plaintiff fails to state a claim because plaintiff fails to adequately plead that CFS is subject to the FLSA, and thus required to pay plaintiff overtime wages. In particular, defendants argue that CFS is exempt from the requirements of the FLSA because it is a non-profit organization. Plaintiff counters that CFS is not exempt from the FLSA because it is an enterprise that engages in commerce by charging a fee to some of its enrollees for the services it provides (those whose income and savings exceed the SSI eligibility standards, and who are,

therefore, not eligible to join for free). Further, plaintiff argues that he, too, is engaged in commerce.

The FLSA, 29 U.S.C. § 207(a)(1) provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Enterprise is defined as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. §203 (r)(1). Under the FLSA, defendants are required to pay overtime wages to plaintiff during his employment if either: (1) CFS was an "enterprise engaged in commerce or in the production of goods for commerce,' regardless of whether [] plaintiff was so engaged," or (2) "plaintiff was 'engaged in commerce' or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); Joles v. Johnson County Youth Serv. Bureau, Inc., 885 F. Supp. 1169, 1173-74. The two FLSA causes of action are respectively referred as "enterprise" and "individual" coverage, and plaintiff has the burden of proving at least one to be covered by the FLSA. See Tony and Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n.8 (1985). Defendant argues that the complaint fails to sufficiently allege either. The court agrees.

First, plaintiff argues[1] that he was employed in an "enterprise engaged in commerce" because CFS's services for its enrollees constitute commercial activity that can compete on the same level with private entrepreneurs. See 29 U.S.C. § 207(a)(1). Specifically, plaintiff argues that because CFS provides enrollees with round trip transportation service to CFS's facilities, hot breakfasts, lunch, snacks, and activities such as bingo, pool, table tennis, and arts and crafts, it is in the same categories as restaurants, public transportation services, and other senior day-care centers. Plaintiff refers to CFS's fee section on its website, which describes how fees are dependent upon an applicant's income, as his main argument of why CFS is not a charity constituting an "eleemosynary institution" under 29 CFR 779.214, which provides:

> [T]he nonprofit educational, religious, and eleemosynary activities will not be included in the enterprise unless they are of the types which the last sentence of section [29 U.S.C. §203(r)(2)(A)], as amended in 1966, declares shall be deemed to be performed for a business purpose. Such activities were not regarded as performed for a business purpose under the prior Act and are not so considered under the Act as it was amended in 1966 except for those activities listed in the last sentence of amended section [29 U.S.C. §203(r)(2)(A)].

Defendants argue that just because a not-for-profit organization charges fees to certain enrollees, does not negate its charitable or eleemosynary status, and hence, its exemption from the FLSA. See, e.g., Kitchings v. Florida United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1294 n.28 (M.D. Fla. 2005) ("The fact that an eleemosynary organization receives income in the form of fees or gifts does not itself render it a 'for profit' or 'business' enterprise. Obviously, the organization will have expenses which must be offset by revenues from some source")."; Genarie v. PRD Management, Inc., 2006 WL 436733, at *29-30 (D.N.J. 2006)

---

[1] The court notes that plaintiff's memorandum in opposition to defendants' motion to dismiss fails to cite a single case or attempts to distinguish the case cited by the defendants.

("Charging a fee for services does not necessarily render a non-profit corporation a 'business enterprise' under the FLSA"). Further, defendants argue that CFS is not in competition with restaurants or public transportation because it provides these services only to its enrollees, and not to the general public. As explained by the court in Benton v. Laborers' Joint Training Fund, 121 F. Supp. 3d 41, 52 (D.D.C. 2015):

> Although transportation services, cellular telephone services, food, lodging, and clothing are all made publically available for purchase by commercial businesses, where those same goods and services are provided by a non-profit organization free of charge and not made available to the general public, courts have consistently found that the non-profit organization is not engaging in commercial competition or subject to enterprise coverage under the FLSA.

To plead "enterprise" coverage, plaintiff must plead facts to support that: (1) Defendants "are engaged in commerce or in the production of goods for commerce," and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. §203(s)(1)(A). It is well-settled that not-for-profit corporations are generally not subject to the FLSA unless they engage in ordinary commercial activities or fit into one of the exceptions listed in §203(r)(2). Joles, 885 F. Supp. 1169, 1175 (S.D. Ind. 1995); See Tony and Susan Alamo Found., 471 U.S. at 297 (quoting 29 C.F.R. § 779.214).

29 U.S.C. §203(r)(2)(A) provides that an enterprise's activities are deemed to be a business purpose when the activity is:

> in connection with the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is operated for profit or not for profit)

The limited activities listed in 203(r)(2)(A) establishes that Congress intended that those institutions not providing residential services should be recognized as not engaged in activities performed for a business purpose, and therefore, not covered by the FLSA. Had Congress intended the definition of "activities performed for a business purpose" to include all care for the aged, regardless of where they resided, then it would not have added the limitation that those recipients "reside on the premises of such institution." Any other interpretation renders the exception meaningless. In Re Auto Prof'ls, Inc., 370 B.R. 161, 179 (N.D. Ill. 2007), (quoting Matter of Cash Currency Exchange, Inc., 762 F.2d 542, 552 (7th Cir. 1985) ("the general rule of statutory construction is that the enumeration of specific exclusions from the operation of the statute is an indication that the statute should apply to all cases not specifically excluded")); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001).

In the instant case, plaintiff does not allege that CFS provides residential care for its enrollees and does not discuss or try to apply the exceptions listed in Sections 203(r)(2). Defendants correctly assert that providing free services to eligible senior citizens does not rise to the level of commercial activity that competes with ordinary private businesses that charge everyone for every service or product. See, e.g., Ray v. Yamhill Cmty. Action P'ship., 2011 WL 5865952, at **3-5 (D. Or. 2011) (holding that a non-profit that provided transportation services only to disabled individuals and income seniors was not an enterprise engaged in commerce); Wagner v. Salvation Army, 660 F. Supp. 466, 467-68 (E.D. Tenn. 1986) (finding that Salvation Army's transient lodge – which provided food, clothing, and housing free of charge to transient individuals – was not competing with private entrepreneurs or subject to FLSA enterprise coverage).

Because CFS is a non-profit organization and does not offer residential care to the aged, it does not fall into any of the exceptions listed in 29 U.S.C. §203(r)(2). Consequently, as a non-residential care facility, CFS is exempt within the meaning of the statute. As a result, plaintiff is not entitled to overtime wages under a FLSA enterprise liability claim.

Next, plaintiff alleges[2] that that he has "individual" coverage under the FLSA. In particular, he alleges that he is engaged in individual commerce by purchasing supplies from out-of-state and handling out-of-state packages delivered to CFS. Defendants argue that plaintiff fails to plead individual coverage under FLSA because most of plaintiff's work was local and his out-of-state errands were not regularly performed to qualify as engaging in commerce. To determine individual coverage, courts look to whether an employee's work "is so directly and virtually related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." Mitchell v. S. A. Healy Co., 284 F.2d 39, 42 (7th Cir. 1960); 29 C.F.R. §§ 776.9 -776.12; Rivas v. Marcelo Hand Car Wash, Inc., 115324, at *4-5 (N.D. Ill. 2010) (employee who washed cars that moved in interstate commerce with products purchased in interstate commerce at a business that advertised in interstate commerce did not have individual coverage because employee's "local handling of vehicles [was] simply too far removed from interstate commerce" to bring him within the scope of FLSA); Jae Hwang Kim v. Hopfauf, 2017 WL 85441, at *1-2, 7-8 (N.D. Ill. 2017) (an Illinois

---

[2] Plaintiff's memorandum in opposition to defendants' motion to dismiss fails to address this issue, resulting in a waiver. Promega Corp. v. Life Techs. Corp., 875 F.3d 651, 661 (7th Cir. 2017). Nonetheless, the Court will address the individual coverage issue since it is alleged in the second amended complaint.

employee who regularly operated cash register, regularly processed credit cards, and telephonically ordered supplies from New York engaged in interstate commerce).

Federal courts have consistently held that an employee's sporadic or isolate activities do not entitle the employee protection under the FLSA. Reagor v. Okmulgee County Family Res. Ctr., Inc., 501 Fed. Appx. 805, 809 (10th Cir. 2012); Dent v. Giaimo, 606 F. Supp. 2d 1357, 1360 (S.D. Fla. 2009); see also Bowrin v. Catholic Guardian Soc'y., 417 F. Supp. 2d 449, 466 (S.D.N.Y. 2006); see also Aranda v. J Vega's Constr., Inc., 2018 WL 3232790, *5 (N.D. Ill. 2018). In other words, to be engaged in commerce, a majority of the employee's work must be connected to interstate commerce. Kitchings v. Fla. United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1293 n.26 (M.D. Fla. 2005); Reagor, 501 Fed. Appx. at 809. For example, the employee must in his work "regularly and recurrently use an instrument of interstate commerce." Reagor, 501 Fed. Appx. at 809; See Thorne v. All Restoration Servs. Inc., 448 F.3d 1264, 1266 (11th Cir. 2006); see also 29 C.F.R. § 776.10(b) ("requiring regular and recurrent use of instruments of communication as part of job duties").

In the instant case, plaintiff was not "engaged in commerce." Plaintiff's primary job duty was performing maintenance tasks for CFS. Sometimes he would run errands, which were mostly local and within the state of Illinois (including purchasing items from a local Mexican store). Plaintiff's activities involved out-of-state conduct only when he was handling CFS's mail or when he bought a special motor to maintain CFS's pond. Similar to Rivas, these two activities are not directly related to the functionality of CFS's operations, and thus are too far removed to constitute interstate commerce. Even though plaintiff did use CFS's credit card to purchase various goods like in Hopfauf, plaintiff's work mainly involved local activities, which

9

is precisely the type that has been found insufficient to support individual coverage under the FLSA. Consequently, the court concludes that plaintiff has failed to allege he was engaged in commerce or that defendants were subject to the overtime provisions of the FLSA.

## **CONCLUSION**

For the reasons described above, defendants' motion to dismiss [Doc 21] is granted. The court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(C)(3).

**ENTER:** October 15, 2019

_____
**Robert W. Gettleman
United States District Judge**